UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

TYRONE PRICE,

                                    Plaintiff,

                    v.

DR. CARL KOENIGSMANN, *et al*.,

                                    Defendants.

No. 19-CV-4068 (KMK)

OPINION & ORDER

<u>Appearances:</u>

Tyrone Price
E. Elmhurst, NY
*Pro se Plaintiff*

Jennifer R. Gashi, Esq.
New York State Office of the Attorney General
White Plains, NY
*Counsel for Defendants*

KENNETH M. KARAS, United States District Judge:

        Tyrone Joaquin Price ("Plaintiff"), proceeding pro se, brings this Action, pursuant to 42

U.S.C. § 1983, against Defendants, alleging that they violated the Eighth and Fourteenth

Amendments by failing to properly care for a finger injury.  (*See* Compl. (Dkt. No. 2).)[1] Before

the Court is Defendants' Motion to Dismiss the Complaint (the "Motion"), filed pursuant to

Federal Rule of Civil Procedure 12(b)(6).  (*See* Not. of Mot. (Dkt. No. 22).)   For the following

reasons, the Motion is granted.

_____

        [1] "Defendants" refers to Dr. Carl Koenigsmann ("Koenigsmann"), M.D. Robert
Bentivega ("Bentivegna"), and Thomas Griffen ("Griffin").  (*See generally* Dkt.; Compl.)
Plaintiff has misspelled these names in his Complaint, and the Court refers to the correct
spellings present in Defendants' Memorandum.  (*See* Defs.' Mem. of Law in Supp. of Mot.
("Defs.' Mem.") 1 (Dkt. No. 23).)

## I.  Background

### A.  Factual Background

The following facts are drawn from Plaintiff's Complaint and the exhibits attached therein and are taken as true for the purpose of resolving the instant Motion.[2]

Plaintiff, at all relevant times, has been imprisoned at Green Haven Correctional Facility ("Green Haven").  (Compl. 3.)[3]  Plaintiff alleges that, in November 2016, he suffered a finger injury to his ring finger while playing basketball.  (*See id*. at 3–4.)  Since then, he has allegedly "lost the full mobility of his finger, which will affect his future earning ability, among other things."  (*See id* at 4.)  Plaintiff claims that Defendants "chose to be deliberately indifferent" to his medical needs and attaches a number of grievances and medical records in support of this claim.  (*Id*.; *see also id*. at 9–53.)  Plaintiff alleges that he was finally scheduled for surgery 165 days after his injury.  (*See id*. at 4.)

Based on the records attached to his Complaint, it appears that Plaintiff wrote to the "Medical Department" several times between December 2016 and March 2017 asking for medical attention for his finger injury.  (*Id*. at 10–15.)  Plaintiff claims that he did not seek medical attention for the injury immediately after it occurred in November 2016 because he thought it was just "jammed."  (*Id*. at 27.)  In his March 24, 2017 letter, Plaintiff wrote that, although he had been told in February that certain medical action would be taken, he still had not received adequate care.  (*See id*. at 15.)  Plaintiff filed a grievance regarding the lack of care on April 17, 2017.  (*See id*. at 17–20.)  On June 2, 2017, he received a response from the Inmate

---

[2] *See Sierra Club v. Con-Strux, LLC*, 911 F.3d 85, 88 (2d Cir. 2018) (deeming a complaint to include "any written instrument attached to it as an exhibit" (citations omitted)).

[3] The Court cites to the ECF page numbers in the top right-hand corner of the Complaint.

Grievance Program ("IGP") at Green Haven.  (*See id.* at 20–21.)  It stated that a "Dr. K" had

submitted a request for "surgical repair" of Plaintiff's hand and that the surgery had been

scheduled.  (*Id.* at 21.)  Plaintiff appealed that determination, arguing that he had not been sent

for surgery and was continuing to suffer from the injury.  (*See id.*)  On October 31, 2018,

following a hearing, the Central Office Review Committee ("CORC") issued a determination on

Plaintiff's appeal.  (*See id.* at 23.)  It wrote that Plaintiff's complaints had been satisfied by

seeing an orthopedist six times between February 16, 2017 and January 11, 2018 for finger pain,

by undergoing surgery on May 10, 2017, and completing two regimens of physical therapy.  (*See*

*id.*)  The CORC closed the matter.  (*See id.*)

The medical records show that an x-ray was requested for Plaintiff on December 16,

2016.  (*Id.* at 28.)  The x-ray, which was completed on January 6, 2017, revealed that there was

no fracture, but there was some "[s]oft tissue swelling" in the location of the injury.  (*Id.*)  The

radiologist, an "RJ Mueller," recommended a follow up appointment with a specialist.  (*Id.*)

Plaintiff appears to have had another medical appointment on February 16, 2017, the notes from

which state that the finger was "dislocated" and "slightly swollen" but movable.  (*Id.* at 29.)

Furthermore, a specialist referral form was submitted following this appointment.  (*See id.* at 32.)

After pre-operation consultations in April 2017, (*see id.* at 33), it appears that Plaintiff

was finally administered surgery on May 10, 2017, (*see id.* at 34).  The post-operation notes state

that Plaintiff was given a sling and splint, advised to keep his right arm elevated, and prescribed

some pain medication.  (*See id.*)  Plaintiff had additional follow-up medical appointments in late

May 2017, where it appears that the provider adjusted and examined the splint before sending

Plaintiff back to his cell.  (*See id.* at 37.)  On July 5, 2017, Plaintiff had another follow-up

appointment, at which some sutures were removed, and the "splint and dressing" were replaced.

(*Id*. at 40.)  On October 25, 2017, at another medical appointment, the provider prescribed physical therapy.  (*See id*. at 45.)

Based on the foregoing, Plaintiff raises claims under the Eighth Amendment for deliberate medical indifference and under the Fourteenth Amendment for "lack of Equal Protection," arguing that he would have been afforded better medical care had he been a civilian or a Green Haven employee.  (*Id*. at 4.)  Plaintiff seeks $175,000 in compensatory damages and $350,000 in punitive damages against Defendants.  (*See id*. at 5.)

B.  Procedural History

Plaintiff filed his Complaint and Request to Proceed In Forma Pauperis ("IFP") on May 6, 2019.  (*See* Compl.; Dkt. No. 1.)  The IFP request was granted on August 2, 2019.  (*See* Dkt. No. 6.)  Plaintiff's original Complaint sought to serve a "Dr. K" as a Defendant.  (*See* Compl.)  However, pursuant to a *Valentin* Order, Defendants indicated that they were unable to identify "Dr. K" without further information from Plaintiff and suggested that "Dr. K" was the same individual as the already-named Koenigsmann.  (*See* Order (Dkt. No. 18).)

Following a Pre-Motion Letter from Defendants, the Court set a briefing schedule for the instant Motion.  (Dkt. No. 21.)  Defendants filed their opening papers on January 7, 2020.  (*See* Not. of Mot.; Defs.' Mem.)  Plaintiff filed an Opposition on February 7, 2020.  (*See* Pl.'s Mem. in Opp'n to Mot. ("Pl.'s Mem.") (Dkt. No. 24).)  Defendants filed a Reply Affirmation on February 27, 2020.  (*See* Defs.' Reply Aff'n in Supp. of Mot. ("Defs.' Reply") (Dkt. No. 25).)

II.  Discussion

A.  Standard of Review

The Supreme Court has held that although a complaint "does not need detailed factual allegations" to survive a motion to dismiss, "a plaintiff's obligation to provide the grounds of his

entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration and quotation marks omitted).  Indeed, Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id.* (alteration and quotation marks omitted).  Rather, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.  Although "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint," *id.* at 563, and a plaintiff must allege "only enough facts to state a claim to relief that is plausible on its face," *id.* at 570, if a plaintiff has not "nudged [his] claim[] across the line from conceivable to plausible, the[] complaint must be dismissed," *id.*; *see also Iqbal*, 556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.  But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" (second alteration in original) (citation omitted) (quoting Fed. R. Civ. P. 8(a)(2))); *id.* at 678–79 ("Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").

"[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam), and "draw[] all reasonable inferences in favor of the plaintiff," *Daniel v. T&M Prot.*

*Res., Inc.*, 992 F. Supp. 2d 302, 304 n.1 (S.D.N.Y. 2014) (citing *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012)).  Additionally, "[i]n adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) (quotation marks omitted); *see also Wang v. Palmisano*, 157 F. Supp. 3d 306, 317 (S.D.N.Y. 2016) (same).  Where, as here, a plaintiff proceeds pro se, the court must "construe[] [his] [complaint] liberally and interpret[] [it] to raise the strongest arguments that [it] suggest[s]." *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (quotation marks omitted).  However, "the liberal treatment afforded to pro se litigants does not exempt a pro se party from compliance with relevant rules of procedural and substantive law." *Bell v. Jendell*, 980 F. Supp. 2d 555, 559 (S.D.N.Y. 2013) (quotation marks omitted); *see also Caidor v. Onondaga County*, 517 F.3d 601, 605 (2d Cir. 2008) ("[P]ro se litigants generally are required to inform themselves regarding procedural rules and to comply with them." (italics and quotation marks omitted)).

Generally, "[i]n adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) (quotation marks and citation omitted).  When a plaintiff proceeds pro se, however, the Court may consider "materials outside the complaint to the extent that they are consistent with the allegations in the complaint," *Alsaifullah v. Furco*, No. 12-CV-2907, 2013 WL 3972514, at *4 n.3 (S.D.N.Y. Aug. 2, 2013) (quotation marks omitted), including "documents that a pro se litigant attaches to his

6

opposition papers," *Agu v. Rhea*, No. 09-CV-4732, 2010 WL 5186839, at *4 n.6 (E.D.N.Y. Dec. 15, 2010) (italics omitted).

B.  Analysis

Defendants argue that Plaintiff fails to state a claim under either the Eighth or Fourteenth Amendment; that Defendants are not plausibly alleged to have been personally involved in any constitutional violation; that Defendants are entitled to qualified immunity; and that the Court should dismiss any state law claims.  (*See generally* Defs.' Mem.)  The Court will address the arguments as needed.

1.  Personal Involvement

"It is well settled that, in order to establish a defendant's individual liability in a suit brought under [42 U.S.C.] § 1983, a plaintiff must show . . . the defendant's personal involvement in the alleged constitutional deprivation."  *Grullon v. City of New Haven*, 720 F.3d 133, 138 (2d Cir. 2013). To establish personal involvement, a plaintiff must show that:

> (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.

*Id.* at 139 (citations and alterations omitted).  In other words, "[b]ecause vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."  *Iqbal*, 556 U.S. at 676.  Therefore, Plaintiff must plausibly allege that Defendants' actions fall into one of the five categories identified above.  *See Lebron v. Mrzyglod*, No. 14-CV-10290, 2017 WL 365493, at *4

(S.D.N.Y. Jan. 24, 2017) (holding that the five categories "still control[] with respect to claims that do not require a showing of discriminatory intent" post-*Iqbal*).

Plaintiff's Complaint fails to allege how any named Defendant was involved in the incidents underlying his claims.  Indeed, Koenigsmann's name does not appear in the allegations at all.  (*See generally* Compl.)  Failing to name a defendant outside the caption of the complaint is grounds for dismissal.  *See Thomas v. Dubois*, No. 19-CV-7533, 2020 WL 2092426, at *3 (S.D.N.Y. Apr. 30, 2020) (dismissing pro se inmate plaintiff's complaint because the plaintiff did "not even mention [the d]efendant in the body of the [c]omplaint" (collecting cases)); *see also Moore v. Westchester County*, No. 18-CV-7782, 2019 WL 3889859, at *5 (S.D.N.Y. Aug. 19, 2019) (explaining that "personal involvement is not established where the defendant's name appears only in the caption of the complaint" (citation omitted)); *Mercedes v. Westchester County*, No. 18-CV-4087, 2019 WL 1429566, at *5 (S.D.N.Y. Mar. 29, 2019) (dismissing defendants who were not alleged to have participated in, inter alia, any alleged constitutional violations regarding medical care) (collecting cases);  *Lovick v. Schriro*, No. 12-CV-7419, 2014 WL 3778184, at *3 (S.D.N.Y. July 25, 2014) (dismissing the plaintiff's § 1983 claims against certain defendants whose names appeared only in the caption of the complaint and on the list of all defendants).  Therefore, Koenigsmann is dismissed for lack of personal involvement.

Griffin, alleged to be the Superintendent at Green Haven during the relevant time period, is mentioned because Plaintiff allegedly had "many opportunities and occasions" to speak to him while he made rounds in Plaintiff's prison block.  (Compl. 7.)  However, Plaintiff does not allege what he mentioned to Griffin or whether Griffin made any decisions that affected the quality of medical care that Plaintiff received.  (*See id*.)  Plaintiff does not allege whether Griffin was even involved in the evaluation or denial of Plaintiff's grievances, and his name does not appear in

any of the grievance decisions. (*See id*. at 17–23.) Moreover, even if he had been alleged to have played a role in Plaintiff's medical grievances, "[p]rison administrators may rely on opinions of medical personnel when evaluating the proper care to be administered to prisoners, and cannot be held to have been personally involved based" on their knowledge of or dismissal of a medical-related grievance. *See Crosby v. Petermann*, No. 18-CV-9470, 2020 WL 1434932, at *10 (S.D.N.Y. Mar. 24, 2020) (citations omitted). Griffin "was not directly involved in providing medical care to . . . [P]laintiff," and therefore was not alleged to have participated in any underlying constitutional violation. *Id*. Plaintiff has sought "to attach personal liability to [Griffin merely] . . . based upon [his] supervisory position[] at [Green Haven]," but such allegations are "insufficient as a matter of law," because "it is not alleged that [Griffin] is a doctor, or that he personally provided (or was capable of providing) [P]laintiff with medical care." *Joyner v. Greiner*, 195 F. Supp. 2d 500, 506 (S.D.N.Y. 2002) (citation omitted); *see also Luck v. Westchester Med. Ctr.*, No. 17-CV-9110, 2020 WL 564635, at *11 (S.D.N.Y. Feb. 4, 2020) ("[A]mple Second Circuit case law makes clear that a [p]laintiff does not state a claim where he alleges only that a supervisory official received reports of wrongdoing." (citation, alteration, and quotation marks omitted)); *Waller v. DuBois*, No. 16-CV-6697, 2018 WL 1605079, at *9 (S.D.N.Y. Mar. 29, 2018) (dismissing supervisory, non-medical official, even if he had knowledge of the medical grievances because such administrators are permitted "to rely upon and be guided by the opinions of medical personnel" concerning the proper course of treatment administered to prisoners (citation and quotation marks omitted)); *Ward v. Capra*, No. 16-CV-6533, 2018 WL 1578398, at *6 (S.D.N.Y. Mar. 29, 2018) (same).

Bentivegna is mentioned in Plaintiff's attached medical records as the reviewing doctor on consultations with an outside orthopedist. (*See* Compl. 31, 40, 45, 46.) However, other than

being a reviewing doctor, it is unclear what role, if any, Bentivegna played in the medical decisions that underlie Plaintiff's allegations.  Generally, "[s]upervisory officials may not be held responsible in a [§] 1983 action unless they were personally involved in the alleged constitutional violations." *Crosby*, 2020 WL 1434932, at *9–10 (citations omitted) (dismissing complaint against a supervising doctor-defendant because he was merely alleged not to have responded or reacted to the plaintiff's medical grievances); *Whitley v. Ort*, No. 17-CV-3652, 2018 WL 4684144, at *6–7 (S.D.N.Y. Sept. 28, 2018) (explaining that Bentivegna cannot "be held personally liable for constitutional violations by other medical staff . . . merely because he was in a high position of authority" and dismissing him because the complaint failed to allege that he was responsible for the underlying medical care at issue (citation and quotation marks omitted)); *cf. Donohue v. Manetti*, No. 15-CV-636, 2016 WL 740439, at *4 (E.D.N.Y. Feb. 24, 2016) (finding that a doctor and nurse were plausibly alleged to have been personally involved where they were alleged to have actually evaluated the plaintiff and made medical decisions regarding the plaintiff's condition).

### 2.  Deliberate Medical Indifference Claim

In any event, to the extent that either Griffin or Bentivegna's personal involvement was plausibly alleged, Plaintiff's Complaint nevertheless fails because he did not adequately state a claim for deliberate medical indifference under the Eighth Amendment.

"The Eighth Amendment forbids 'deliberate indifference to serious medical needs of prisoners.'" *Spavone v. N.Y. State Dep't of Corr. Servs.*, 719 F.3d 127, 138 (2d Cir. 2013) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)).  An inmate's claim of deliberate indifference to his medical needs by those overseeing his care is analyzed under the Eighth Amendment because it is an allegation that "conditions of confinement [are] a form of

punishment" and thus is a "violation of [the] Eighth Amendment right to be free from cruel and unusual punishments." *Darnell v. Pineiro*, 849 F.3d 17, 35 (2d Cir. 2017). To state a deliberate indifference claim, an inmate must plausibly allege (1) "that he suffered a sufficiently serious constitutional deprivation," and (2) that the defendants "acted with deliberate indifference." *Feliciano v. Anderson*, No. 15-CV-4106, 2017 WL 1189747, at *8 (S.D.N.Y. Mar. 30, 2017).

The first element is "objective" and requires that the plaintiff show that the "alleged deprivation of adequate medical care [is] sufficiently serious." *Spavone*, 719 F.3d at 138 (citation and quotation marks omitted). In other words, the plaintiff "must show that the conditions, either alone or in combination, pose an unreasonable risk of serious damage to his health." *Walker v. Schult*, 717 F.3d 119, 125 (2d Cir. 2013) (citation omitted). Analyzing this objective requirement involves two inquiries: "whether the prisoner was actually deprived of adequate medical care," and "whether the inadequacy in medical care is sufficiently serious," which in turn "requires the court to examine how the offending conduct is inadequate and what harm, if any, the inadequacy has caused or will likely cause the prisoner." *Salahuddin v. Goord*, 467 F.3d 263, 279–80 (2d Cir. 2006) (citations omitted). "There is no settled, precise metric to guide a court in its estimation of the seriousness of a prisoner's medical condition." *Brock v. Wright*, 315 F.3d 158, 162 (2d Cir. 2003). Nevertheless, the Second Circuit has offered the following non-exhaustive list of factors to consider when evaluating an inmate's medical condition: "(1) whether a reasonable doctor or patient would perceive the medical need in question as important and worthy of comment or treatment, (2) whether the medical condition significantly affects daily activities, and (3) the existence of chronic and substantial pain." *Id.* (citation and quotation marks omitted).

The second element, which goes to mental state, requires the plaintiff show that prison officials were "subjectively reckless in their denial of medical care." *Spavone*, 719 F.3d at 138 (citation omitted). This means that the official must have "appreciate[d] the risk to which a prisoner was subjected," and have had a "subjective awareness of the harmfulness associated with those conditions." *Darnell*, 849 F.3d at 35; *see also Nielsen v. Rabin*, 746 F.3d 58, 63 (2d Cir. 2014) ("Deliberate indifference is a mental state equivalent to subjective recklessness," and "requires that the charged official act or fail to act while actually aware of a substantial risk that serious inmate harm will result." (citation, footnote, and quotation marks omitted)). In other words, "[i]n medical-treatment cases not arising from emergency situations, the official's state of mind need not reach the level of knowing and purposeful infliction of harm; it suffices if the plaintiff proves that the official acted with deliberate indifference to inmate health." *Salahuddin*, 467 F.3d at 280 (citation omitted). An official's awareness of the risk of serious harm can be established through "inference from circumstantial evidence," including "from the very fact that the risk was obvious." *Farmer v. Brennan*, 511 U.S. 825, 842 (1994) (citation omitted). However, "mere negligence" is insufficient to state a claim for deliberate indifference. *Walker*, 717 F.3d at 125 (quoting *Farmer*, 511 U.S. at 835). Neither does "mere disagreement over the proper treatment . . . create a constitutional claim"; "[s]o long as the treatment given is adequate, the fact that a prisoner might prefer a different treatment does not give rise to an Eighth Amendment violation." *Chance v. Armstrong*, 143 F.3d 698, 703 (2d Cir. 1998).

Plaintiff fails to meet both prongs of the Eighth Amendment deliberate medical indifference claim. As to the first prong, the alleged finger injury does not rise to the level of "an unreasonable risk of serious damage to [Plaintiff's] health." *Walker*, 717 F.3d at 125 (citations omitted). Minor injuries, such as a broken finger, have consistently been held to fall below the

objective level of harm required to maintain such a claim.  *See Smolen v. Wesley*, No. 16-CV-2417, 2019 WL 4727311, at *8 (S.D.N.Y. Sept. 25, 2019) ("A broken finger . . . does not pose a 'substantial risk of serious harm' because 'it does not produce death, degeneration, or extreme pain.'" (citation omitted)); *Henderson v. Doe*, No. 98-CV-5011, 1999 WL 378333, at *2 (S.D.N.Y. June 10, 1999) (explaining that a broken finger does not present the kind of injury contemplated by the Eighth Amendment's medical indifference protections) (collecting cases).

Moreover, "[c]ontrary to [Plaintiff's] conclusory allegations, the [Complaint and attached exhibits] show[] that he did receive medical attention on numerous occasions over several months." *Ramirez v. Lewis*, No. 18-CV-3486, 2020 WL 2859105, at *11 (S.D.N.Y. Jan. 24, 2020) (citations omitted), *adopted in relevant part*, 2020 WL 1303454 (S.D.N.Y. Mar. 19, 2020). Plaintiff was given at least one x-ray, multiple follow-up and pre-operation appointments, a surgical procedure, a protective sling, pain medication, multiple post-operation follow-up appointments, and physical therapy.  (*See* Compl. 27–47.)  These actions cannot be said to constitute medical indifference to Plaintiff's injury.  "Indeed, treatment of a prisoner's medical condition generally defeats a claim of deliberate indifference." *Melvin v. County of Westchester*, No. 14-CV-2995, 2016 WL 1254394, at *7 (S.D.N.Y. Mar. 29, 2016) (citation and quotation marks omitted); *see also Peterson v. Miller*, No. 04-CV-797, 2007 WL 2071743, at *10 (N.D.N.Y. July 13, 2007) (same).  Nor is it sufficient for Plaintiff to take issue with the manner of treatment because the Court "will not second guess" "the choice of a certain *course* of treatment."  *Johnson v. Wright*, 234 F. Supp. 2d 352, 361 (S.D.N.Y. 2002) (emphasis added) (citation and quotation marks omitted).

To the extent Plaintiff seeks to base his claims on the amount of time it took to execute these steps, his injury was not serious enough to render any such delay unconstitutional.  "Where

a plaintiff complains of delays or interruptions in providing needed medical treatment, the court should consider the severity of the challenged delay or interruption in treatment rather than the prisoner's underlying medical condition alone in determining whether plaintiff has shown the existence of a sufficiently serious medical need." *Balkum v. Unger*, No. 06-CV-6578, 2009 WL 290439, at *5 (W.D.N.Y. Feb. 5, 2009). "[A] delay in treatment does not violate the constitution unless it involves an act or failure to act that evinces a conscious disregard of a substantial risk of serious harm." *Pabon v. Wright*, No. 99-CV-2196, 2004 WL 628784, at *8 (S.D.N.Y. Mar. 29, 2004) (citation and quotation marks omitted), *aff'd*, 459 F.3d 241 (2d Cir. 2006). "Here, Plaintiff has not alleged any conduct or behavior that would suggest the delay [in his finger surgery] was caused by [Defendants'] deliberate indifference." *Norman v. Marcilla*, No. 17-CV-9174, 2019 WL 3066426, at *5 (S.D.N.Y. July 11, 2019) (citation and quotation marks omitted). Indeed, Plaintiff includes records demonstrating that he received a surgery referral and post-operation care, (*see* Compl. 32, 34), but there are no allegations suggesting that any Defendant "took *affirmative* steps to ensure that [Plaintiff] would not receive [medical] treatment," *Myrie v. Calvo*, 615 F. Supp. 2d 246, 248 (S.D.N.Y. 2009) (emphasis added). "Absent such allegations, the . . . Complaint suggests only that [Defendants] acted, or failed to act, with negligence amounting to medical malpractice, which is insufficient to state a claim for deliberate indifference." *Norman*, 2019 WL 3066426, at *5 (citation and quotation marks omitted). The Court therefore concludes that Plaintiff fails to state a deliberate indifference claim as to the quality or delay of his finger treatment. *See Bell*, 980 F. Supp. 2d at 562 (collecting cases for the proposition that courts dismiss deliberate indifference claims in which inmates "merely allege a delay in the provision of medication or treatment, but fail to allege that the delay was either intentional or reckless" (collecting cases)); *see also Hernandez v. Keane*, 341 F.3d 137, 145–46

14

(2d Cir. 2003) (holding no Eighth Amendment violation where doctor failed, inter alia, to have pins and wires removed from the plaintiff's broken hand within prescribed time after hand surgery because the "evidence . . . suggests at most several acts of negligence over a prolonged period") (citations omitted); *Ward*, 2019 WL 1922290, at *5 (dismissing deliberate indifference claim where the plaintiff alleged that he suffered "permanent deformity and stiffness in [his] finger" due to delayed surgery and post-surgery care but failed to allege any facts supporting an intentional or reckless mental state underlying the delay (record citations omitted)).

### 3.  Equal Protection Claim

Plaintiff appears to assert an Equal Protection claim as well, alleging that he would have received better medical care had he been a civilian or an employee at Green Haven.  (*See* Compl. 4.)  This claim is also not viable.  "[T]o assert an equal protection claim, a plaintiff must plead (1) adverse treatment 'compared with similarly situated individuals,' and (2) 'that such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person.'" *Marom v. Town of Greenburgh*, No. 13-CV-4733, 2015 WL 783378, at *9 (S.D.N.Y. Feb. 23, 2015) (quoting *Miner v. Clinton County*, 541 F.3d 464, 474 (2d Cir. 2008)).  This requires a showing of "discriminatory intent or purpose."  *Village of Arlington Heights v. Met. Hous. Dev. Corp.*, 429 U.S. 252, 265 (1977); *see also Phillips v. Girdich*, 408 F.3d 124, 129 (2d Cir. 2005) (holding that a plaintiff must allege "that he was treated differently than others similarly situated as a result of intentional or purposeful discrimination" (citation omitted)); *Giano v. Senkowski*, 54 F.3d 1050, 1057 (2d Cir. 1995) (holding that a plaintiff "must prove purposeful discrimination, directed at an identifiable or suspect class" (citing *McCleskey v. Kemp*, 481 U.S. 279, 292 (1987), and *Kadrmas v. Dickinson Pub. Schs.*, 487 U.S. 450, 457–58 (1988))).

Here, "[t]he [C]ourt does not apply a heightened standard of review to prisoner claims because prisoners 'either in the aggregate or specified by offense' are not a suspect class." *Zigmund v. Foster*, 106 F. Supp. 2d 352, 362 (D. Conn. 2000) (quoting *Lee v. Governor of N.Y.*, 87 F.3d 55, 60 (2d Cir. 1996)); *see also Campbell v. Quiros*, No. 17-CV-946, 2018 WL 888723, at *5 (D. Conn. Feb. 13, 2018) ("It is well-established that 'merely being a prisoner is insufficient to place one in a suspected class.'" (citation and alterations omitted)).  Plaintiff does not allege to be part of any other suspect class.  (*See generally* Compl.)  Therefore, the Court applies "rational basis [scrutiny] to [Plaintiff's] equal protection claim."  *Campbell*, 2018 WL 888723, at *6 (collecting cases).  Accordingly, any delay that Plaintiff experienced in his medical care, without more, is explained by the "state's interest in efficiently distributing its limited resources," *Hogan v. Russ*, 890 F. Supp. 146, 148 (N.D.N.Y. 1995) (citation omitted), along with a prison's "space and security constraints," *Allah v. Annucci*, No. 16-CV-1841, 2020 WL 3073184, at *11 (S.D.N.Y. June 10, 2020) (record citation omitted).  Therefore, any Equal Protection claim fails.[4]

### 4.  State Law Claims

To the extent Plaintiff seeks to allege any state claims of negligence or medical malpractice, they are dismissed.  They are barred by New York Correction Law § 24, which provides that "[n]o civil action shall be brought in any court of the state . . . against any officer or employee of [the New York Department of Corrections and Community Supervision

---

[4] Even to the extent Plaintiff seeks to state a "class of one" Equal Protection claim, Plaintiff has failed to allege (1) a comparator with whom he shares "an 'extremely high' level of similarity" in circumstances and (2) "no rational basis for the difference in treatment" between him and the comparator.  *Montgomery v. Dep't of Corr.*, No. 17-CV-1635, 2017 WL 5473445, at *5 (D. Conn. Nov. 13, 2017) (citations omitted).  No such comparator is present in the allegations.

("DOCCS")] . . . in his or her personal capacity, for damages arising out of any act done or the failure to perform any act within the scope of employment and in the discharge of duties by such officer or employee." N.Y. Correct. Law § 24; *see also Baker v. Coughlin*, 77 F.3d 12, 15 (2d Cir. 1996) (holding that § 24 applies to claims in federal court). Therefore, "[c]ourts in the Second Circuit have long held that [§] 24 precludes a plaintiff from raising state law claims in federal court against state employees in their personal capacities for actions arising within the scope of their employment." *Davis v. McCready*, 283 F. Supp. 3d 108, 123 (S.D.N.Y. 2017) (collecting cases). Here, Defendants clearly were DOCCS employees performing their duties at Green Haven when the alleged constitutional violations occurred. Any state law claims must therefore be dismissed.

### III.  Conclusion

For the foregoing reasons, the Court grants Defendants' Motion To Dismiss. Because this is the first adjudication of Plaintiff's claims on the merits, Plaintiff's claims are dismissed without prejudice. If Plaintiff wishes to file an amended complaint alleging additional facts and otherwise addressing the deficiencies identified above, Plaintiff must do so within 30 days of the date of this Opinion & Order. Plaintiff is advised that an amended complaint will *replace* the Complaint and, therefore, must contain *all* of the alleged facts on which Plaintiff bases his claims. Plaintiff is instructed to support his legal claims with clear, factual allegations and avoid making conclusory legal statements. Plaintiff is further advised that it is generally in his best interest to describe what happened in his own words instead of merely attaching medical records that are often difficult to decipher. Failing to timely and properly amend may result in dismissal with prejudice of this Action.

The Clerk of Court is respectfully directed to terminate the pending Motion, (Dkt. No. 22), and to mail a copy of this Opinion & Order to Plaintiff.

SO ORDERED.

Dated:   July 24, 2020
         White Plains, New York

_____
KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE