UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

TYRONE PRICE,

                       Plaintiff,

    v.

DR. CARL KOENIGSMANN, *et al.*,

                       Defendants.

No. 19-CV-4068 (KMK)

OPINION & ORDER

---

Tyrone Price
E. Elmhurst, NY
*Pro Se Plaintiff*

Kathryn Martin, Esq.
Office of the New York State Attorney General
White Plains, NY
*Counsel for Defendants*

KENNETH M. KARAS, United States District Judge:

    Tyrone Price ("Plaintiff"), proceeding pro se, brings this Action, pursuant to 42 U.S.C. § 1983, against Dr. Carl Koenigsmann, Dr. Robert Bentivegna, and Thomas Griffin ("Defendants"), alleging that they violated Plaintiff's Eighth and Fourteenth Amendment rights by failing to properly care for a finger injury sustained while Plaintiff was incarcerated at Green Haven Correctional Facility ("Green Haven"). (*See* Am. Compl. (Dkt. No. 41).) Before the Court is Defendants' Motion To Dismiss the Amended Complaint (the "Motion"), filed pursuant to Federal Rule of Civil Procedure 12(b)(6). (*See* Not. of Mot. (Dkt. No. 46).) For the foregoing reasons, the Motion is granted.

I. Background

A. Factual Background

The following facts are drawn from Plaintiff's Amended Complaint and the exhibits attached thereto and are assumed to be true for the purpose of resolving the instant Motion. *See Sierra Club v. Con-Strux, LLC*, 911 F.3d 85, 88 (2d Cir. 2018) ("A complaint is . . . deemed to include[,] [inter alia,] any written instrument attached to it as an exhibit." (quotation marks omitted)).[1]

Plaintiff alleges that, in November 2016, he suffered an injury to his ring finger while playing basketball. (Am. Compl. 11.)[2] Plaintiff initially did not seek medical attention for the injury, because he "thought it was jammed," (*id.* at 35), but wrote to the "Medical Department" on December 1, December 7, and December 16, 2016 to request treatment, (*id.* at 18, 19, 20). Plaintiff was seen during sick call on December 16, 2016, and an x-ray of his finger was requested; the x-ray was performed on January 6, 2017 and revealed that there was a "dislocation" and "[s]oft tissue swelling," but no fracture. (*Id.* at 35, 36.) The radiologist recommended a follow-up appointment with a specialist "to exclude small avulsion fracture." (*Id.* at 36 (capitalization omitted).) Plaintiff wrote to the "Medical Department" again on January 9, 2017, seeking further medical attention. (*Id.* at 21.) On January 17, 2017, a referral

---

[1] Defendants rightfully point out that "[i]t is unclear which document is the Amended Complaint" given this Action's procedural history, *see infra*, and explain that Defendants have assumed the document filed at Dkt. No. 41 is the Amended Complaint because it contains the longest and most detailed allegations. (Defs.' Mem. of Law in Supp. of Mot. to Dismiss the Am. Compl. 1 n.1 (Dkt. No. 47).) The various documents filed by Plaintiff are substantively identical and the document filed at Dkt. No. 41 does contain the longest and most detailed allegations. (*Compare* Dkt. No. 41 *with* Dkt. Nos. 32, 33, 35, 36, 39.) As such, the Court agrees with Defendants and identifies the document filed at Dkt. No. 41 as the Amended Complaint.

[2] When citing to the Amended Complaint, the Court refers to the ECF-stamped page numbers at the top-right hand corner of each page.

was made for a consult with an orthopedic surgeon. (*Id.* at 39.) It appears that a provider at Green Haven attempted to examine Plaintiff on January 18, 2017, but was unable to do so "due to security reasons," so Plaintiff was examined on January 19, 2017 instead—the same day that Plaintiff submitted another request to the "Medical Department" for medical attention. (*Id.* at 22, 37.) Plaintiff had his consultation with the orthopedic surgeon on February 14, 2017, and was examined again by a Green Haven provider after he returned on February 16, 2017. (*Id.* at 37, 39–40.)

Plaintiff submitted yet another request to the "Medical Department" on March 24, 2017, writing that he "was told in Feb [he] would be taken to fix [his] finger, [h]owever its April [sic] [and he] still ha[d]n't been taken." (*Id.* at 23 (underlining in original).) On April 17, 2017, Plaintiff filed a grievance regarding his lack of care, in which he repeated his complaint that he was "suppose[d] to have [his] finger taken care of in Feb, however, it[']s April & [it] still [has] not been taken care of" and requested "[t]o please see someone to help with finger to stop the pain." (*Id.* at 25–27.) On May 8, 2017, Plaintiff received a response from the Inmate Grievance Resolution Committee ("IGRC") which recommended that "grievant be given proper medical attention." (*Id.* at 28.)

On April 18, 2017, pre-operating testing was ordered for Plaintiff's hand surgery, which was performed at an outside hospital on May 10, 2017. (*Id.* at 41, 42–44.) Plaintiff had a follow-up appointment with the orthopedic surgeon on May 25, 2017 to remove his stitches, and an additional x-ray was ordered on May 26, 2017; Plaintiff was also again referred to the orthopedic surgeon for a follow-up appointment. (*Id.* at 45–46, 48.) Plaintiff was seen at sick call on May 31, 2017 to change the dressing on his hand before the x-ray was performed on June 6, 2017. (*Id.* at 46, 47.) Meanwhile, Plaintiff received a response from the Inmate

Grievance Program ("IGP") on June 2, 2017 which stated that a "Dr. K" had submitted a request for "surgical repair" of Plaintiff's hand and that the surgery had been scheduled; Plaintiff appealed this determination on June 7, 2017, explaining that he "wasn't sent for surgical repair as [he] was scheduled to go, which in return kept [him] in pain & thus [his] finger would never be the same." (*Id.* at 29.)

Plaintiff was seen at sick call again on June 12, 2017 to change the dressing on his hand once more, and was seen by the orthopedic surgeon on July 6, 2017, who approved physical therapy three times per week for four weeks. (*Id.* at 47, 48, 50.) Plaintiff received physical therapy on thirteen occasions between July 11 and August 11, 2017, (*id.* at 51–52); it appears that he refused one of his planned trips to the hand clinic, on August 3, 2017, because he was receiving a visit, (*id.* at 49). Plaintiff was seen for another follow-up appointment with the orthopedic surgeon on October 26, 2017, who reduced his physical therapy to twice a week for six weeks and scheduled an additional follow-up appointment in two months. (*Id.* at 53.) Plaintiff received physical therapy on eleven occasions between November 13, 2017 and January 4, 2018. (*Id.* at 52.) Plaintiff had what appears to have been his final follow-up with the orthopedic surgeon—at least based on the records Plaintiff attached to the Amended Complaint—on January 11, 2018.[3] (*Id.* at 56.)

On October 31, 2018, following a hearing, the Central Office Review Committee ("CORC") issued a decision on Plaintiff's grievance appeal, in which CORC unanimously agreed to close the appeal. (*Id.* at 31.) CORC wrote that Plaintiff's complaints had been satisfied by seeing an orthopedist six times between February 16, 2017 and January 11, 2018 for

---

[3] While the records from this visit are difficult to read, they may indicate that Plaintiff was to have another follow-up appointment in 8 weeks. (*See* Am. Compl. 56.) If such a follow-up appointment occurred Plaintiff has not provided the records from it.

finger pain, by undergoing surgery on May 10, 2017, and completing two regimens of physical therapy.  (*Id.*)

Plaintiff claims that because he was not scheduled for surgery until "165 days after his injury," he "has lost the full mobility of his finger, which will affect his future earning ability, among other things."  (*Id.* at 3–4.)  Based on the foregoing, Plaintiff raises claims for "medical malpractice" and "medical negligence," in addition to claims under the Eighth Amendment for deliberate indifference to medical needs and under the Fourteenth Amendment for "lack of Equal Protection," arguing that he would have been afforded better medical care had he been a civilian or a Green Haven employee.  (*Id.* at 3–5, 6.)  Liberally construed, Plaintiff also appears to include a claim for denial of access to the law library, arguing that while he has been detained at Rikers Island during the COVID-19 pandemic, the New York Department of Corrections and Community Supervision ("DOCCS") "closed down all law library areas."  (*Id.* at 5.)

B.  Procedural History

Plaintiff filed his original Complaint on May 6, 2019.  (*See* Compl. (Dkt. No. 1).)  Plaintiff's request to proceed in forma pauperis was granted on August 2, 2019.  (*See* Dkt. No. 6.)  Following a pre-motion letter from Defendants, the Court set a briefing schedule on Defendants' Motion to Dismiss the Complaint.  (*See* Dkt. No. 21.)  Defendants filed their opening papers on January 7, 2020.  (*See* Dkt. Nos. 22, 23.)  Plaintiff filed his Opposition on February 7, 2020.  (*See* Dkt. No. 24.)  Defendants filed their Reply on February 27, 2020.  (*See* Dkt. No. 25.)  The Court issued an Opinion & Order on July 24, 2020 ("July Opinion"), dismissing Plaintiff's claims without prejudice and ordering Plaintiff to file an amended complaint addressing the identified deficiencies within 30 days.  (*See* Op. & Order ("July Op.") (Dkt. No. 26).)

Plaintiff failed to amend his Complaint within 30 days, so on September 10, 2020, the Court issued an Order to Show Cause, ordering Plaintiff to show cause by no later than October 13, 2020 as to why the case should not be dismissed for failure to prosecute. (*See* Dkt. No. 27.)  Plaintiff failed to respond, so the Court dismissed the Action without prejudice on October 19, 2020 for failure to prosecute. (*See* Dkt. No. 28.)  The Court received a letter from Plaintiff on October 27, 2020, in which Plaintiff explained that he had been transferred to Rikers Island and lost important legal papers, and did not have access to the law library due to the COVID-19 pandemic. (*See* Dkt. No. 29.)  As such, Plaintiff requested an additional 60 days in which to file an amended complaint. (*See id.*)  The Court granted Plaintiff an additional 30 days to file the Complaint on October 29, 2020, (*see* Dkt. No. 33), and on November 25, 2020, Plaintiff filed a letter purporting to request that Plaintiff be permitted to amend his Complaint, (*see* Dkt. No. 32), which was followed by a substantively identical "Motion to Amend" on December 22, 2020, (*see* Dkt. No. 33).  On December 29, 2020, the Court granted Plaintiff's "Motion to Amend" and ordered Plaintiff to file his amended complaint by February 12, 2021. (*See* Dkt. No. 34.)

Plaintiff filed two additional letters on February 5 and 17, 2021 in which Plaintiff again sought leave to amend his complaint. (*See* Dkt. Nos. 35, 36.)  The Court again granted this request and ordered Plaintiff to file his amended complaint by March 17, 2021. (*See* Dkt. No. 37.)  On March 9, 2021, Defendants filed a pre-motion letter regarding their anticipated motion to dismiss Plaintiff's amended complaint, which Defendants identified as one of Plaintiff's letters. (*See* Dkt. No. 38.)  On March 15 and 16, 2021, the Court received two further letters in which Plaintiff sought to amend his complaint. (*See* Dkt. Nos. 39, 41.)  On March 17, 2021, the Court set a briefing schedule for Defendants' motion to dismiss the amended complaint

and directed Defendants to address Plaintiff's recent submission. (*See* Dkt. No. 40.) After receiving an extension of that schedule, Defendants filed the instant Motion on June 2, 2021. (*See* Not. of Mot.; Defs.' Mem. of Law in Supp. of Mot. To Dismiss the Am. Compl. ("Defs.' Mem.") (Dkt. No. 47); Aff. of Service (Dkt. No. 48).) To date, Plaintiff has failed to respond to Defendants' Motion; the Motion is hereby deemed fully submitted.

## II.  Discussion

### A.  Standard of Review

The Supreme Court has held that although a complaint "does not need detailed factual allegations" to survive a motion to dismiss, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration and quotation marks omitted). Indeed, Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id.* (alteration and quotation marks omitted). Rather, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Although "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint," *id.* at 563, and a plaintiff must allege "only enough facts to state a claim to relief that is plausible on its face," *id.* at 570, if a plaintiff has not "nudged [his] claim[] across the line from conceivable to plausible, the[] complaint must be dismissed," *id.*; *see also Iqbal*, 556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of

misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" (second alteration in original) (citation omitted) (quoting FED. R. CIV. P. 8(a)(2))); *id.* at 678–79 ("Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").

"[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam), and "draw all reasonable inferences in the plaintiff's favor," *Div. 1181 Amalgamated Transit Union-N.Y. Emps. Pension Fund v. N.Y.C. Dep't of Educ.*, 9 F.4th 91, 95 (2d Cir. 2021) (per curiam) (citation omitted). Additionally, "when ruling on Rule 12(b)(6) motions to dismiss," district courts are directed to confine their consideration to "the complaint in its entirety, . . . documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Bellin v. Zucker*, 6 F.4th 463, 473 (2d Cir. 2021) (quotation marks omitted); *see also Dashnau v. Unilever Mfg. (US), Inc.*, 529 F. Supp. 3d 235, 240 (S.D.N.Y. Mar. 26, 2021) (same). "However, when the complaint is drafted by a pro se plaintiff, the Court may [also] consider materials outside the complaint to the extent that they are consistent with the allegations in the complaint." *Rivera v. Westchester County*, 483 F. Supp. 3d 70, 76 (S.D.N.Y. 2020) (quotation marks omitted).

Finally, the Court must construe a "pro se complaint liberally to raise the strongest arguments that it suggests." *Costabile v. N.Y.C. Health & Hosps. Corp.*, 951 F.3d 77, 80 (2d Cir. 2020) (italics omitted). "Nonetheless, a pro se complaint must state a plausible claim for relief," *Darby v. Greenman*, 14 F.4th 124, 125 (2d Cir. 2021) (italics and citation omitted), and "the liberal treatment afforded to pro se litigants does not exempt a pro se party from compliance with

relevant rules of procedural and substantive law," *Bell v. Jendell*, 980 F. Supp. 2d 555, 559 (S.D.N.Y. 2013) (quotation marks omitted); *see also Caidor v. Onondaga County*, 517 F.3d 601, 605 (2d Cir. 2008) ("[P]ro se litigants generally are required to inform themselves regarding procedural rules and to comply with them." (italics and quotation marks omitted)).

B.  Analysis

Defendants argue primarily that "[t]he Amended Complaint should be dismissed pursuant to the law of the case doctrine because it re-alleges the same claims on the same dates against the same defendants utilizing near identical allegations," and it was previously determined by this Court that these allegations were insufficient to state a claim. (Defs.' Mem. 4–7.) In the alternative, Defendants argue that: (1) Plaintiff has failed to allege any sufficient facts to establish that Defendants were personally involved in the alleged Eighth Amendment violations to establish individual § 1983 liability, (*id.* at 7–8); (2) Plaintiff has failed to adequately state a claim for deliberate indifference to medical needs because Plaintiff can neither establish that his dislocated ring finger constituted a sufficiently serious medical condition nor that Defendants acted with the required deliberate and willful disregard for his medical needs, (*id.* at 8–15); (3) Plaintiff fails to state a cognizable Equal Protection claim because prisoners are not a protected class and his claim cannot survive rational basis review, (*id.* at 15), (4) Defendants are entitled to qualified immunity, (*id.* at 16–17), and (5) the Court lacks subject matter jurisdiction over Plaintiff's state law claims, (*id.* at 18).

The Court will address these arguments to the extent necessary to decide the Motion.

1.  Personal Liability

As the Court explained in the July Opinion, "[i]t is well settled that, in order to establish a defendant's individual liability in a suit brought under [42 U.S.C.] § 1983, a plaintiff must show . . . the defendant's personal involvement in the alleged constitutional deprivation." (July

9

Op. 7 (quoting *Grullon v. City of New Haven*, 720 F.3d 133, 138 (2d Cir. 2013)).) To establish "personal involvement," a plaintiff must plausibly allege that the defendant's actions fall into one of the following five categories:

> (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.

(*Id.* (quoting *Grullon*, 720 F.3d at 139).) "In other words, '[b]ecause vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.'" (*Id.* (alteration in original) (quoting *Iqbal*, 556 U.S. at 676).)

The Court finds that Plaintiff has failed to cure the deficiencies identified in the original Complaint, and the Amended Complaint too fails to allege how any named Defendant was involved in the incidents underlying his claims. Plaintiff's Amended Complaint contains seven handwritten pages, (*see* Am. Compl. 1–7), and otherwise simply attaches the original Complaint and its exhibits, (*see id.* at 9–60). The Court has already explained why the allegations in the original Complaint are insufficient to establish the Defendants' personal involvement for purposes of individual § 1983 liability, (*see* July Op. 8–10), and the seven pages that Plaintiff has added do not change this conclusion. First, none of the Defendant's names appears in these pages outside of the caption, (*see* Am. Compl. 1–7), which, as the Court explained in the July Opinion, is grounds for dismissal, (*see* July Op. 8 ("Failing to name a defendant outside the caption of the complaint is grounds for dismissal." (collecting cases))). Moreover, the only factual allegations Plaintiff makes that reference "Defendants" are vague and conclusory. (*See*

10

Am. Compl. 4 ("Affixed are Exhibits '1' through '5', which serves [sic] to attest that the Defendants chose to be deliberately indifference [sic] to this Plaintiff[']s medical needs, leaving the end results irreversible."); *id.* ("Thus Plaintiff kept requesting medical attention from medical staff, medical staff along with the named [sic] as the 'Defendant(s)' were dilatory in getting the Plaintiff the treatment neccessary [sic] to prevent the permentant [sic] damage to his finger, that was injured in the facilit[y] gym.").) These allegations—which are also largely identical to portions of the original Complaint, (*e.g.*, *compare* Am. Compl. 5–6 *with* Compl. 3–4)—are insufficient to save Plaintiff's Amended Complaint from dismissal. *See Darby v. Greenman*, 14 F.4th 124, 131 (2d Cir. 2021) ("Even for pro se pleadings, [v]ague and conclusory allegations of official participation in civil rights violations are not sufficient to withstand a motion to dismiss." (alteration in original) (quotation marks and italics omitted)).[4]

    2. Failure to State a Claim

Even assuming arguendo that Defendants' personal involvement was plausibly alleged, Plaintiff's Amended Complaint nevertheless fails because he did not adequately state a claim for either deliberate indifference to medical needs under the Eighth Amendment or for denial of equal protection under the Fourteenth Amendment.

    a. Deliberate Indifference to Medical Needs

As the Court explained in the July Opinion, "[t]he Eighth Amendment forbids deliberate indifference to serious medical needs of prisoners." (July Op. 10 (quoting *Spavone v. N.Y. State*

---

[4] To the extent Plaintiff seeks to bring these claims against Defendants in their official capacities, these claims are precluded by the Eleventh Amendment. *See Severino v. Negron*, 996 F.2d 1439, 1441 (2d Cir. 1993) ("[I]t is clear that the Eleventh Amendment does not permit suit[s] [under § 1983] for money damages against state officials in their official capacities."); *Gunn v. Bentivegna*, No. 20-CV-2440, 2020 WL 2571015, at *3 (S.D.N.Y. May 19, 2020) ("DOCCS officials enjoy Eleventh Amendment immunity from suit under § 1983 in their official capacities.").

*Dep't of Corr. Servs.*, 719 F.3d 127, 138 (2d Cir. 2013)).) "To state a deliberate indifference claim, an inmate must plausibly allege (1) 'that he suffered a sufficiently serious constitutional deprivation,' and (2) that the defendants 'acted with deliberate indifference.'" (*Id.* at 11 (quoting *Feliciano v. Anderson*, No. 15-CV-4106, 2017 WL 1189747, at *8 (S.D.N.Y. Mar. 30, 2017)).) "The first element is 'objective' and requires the plaintiff to show that 'the alleged deprivation of adequate medical care [is] sufficiently serious.'" (*Id.* (alteration in original) (quoting *Spavone*, 719 F.3d at 138).) This, in turn, involves two inquiries: (1) "whether the prisoner was actually deprived of adequate medical care," and (2) "whether the inadequacy in medical care is sufficiently serious." (*Id.* (quoting *Salahuddin v. Goord*, 467 F.3d 263, 279–80 (2d Cir. 2006)).) In evaluating an inmate's medical condition, the Second Circuit has instructed district courts to consider the following non-exhaustive factors: "(1) whether a reasonable doctor or patient would perceive the medical need in question as important and worthy of comment or treatment, (2) whether the medical condition significantly affects daily activities, and (3) the existence of chronic and substantial pain." (*Id.* (quoting *Brock v. Wright*, 315 F.3d 158, 162 (2d Cir. 2003)).)

"The second element, which goes to mental state, requires the plaintiff [to] show that prison officials were 'subjectively reckless in their denial of medical care.'" (*Id.* at 12 (quoting *Spavone*, 719 F.3d at 138).) "This means that the official must have 'appreciate[d] the risk to which a prisoner was subjected,' and have had a 'subjective awareness of the harmfulness associated with those conditions.'" (*Id.* (alteration in original) (quoting *Darnell v. Pineiro*, 849 F.3d 17, 35 (2d Cir. 2017)).) "An official's awareness of the risk of serious harm can be established through 'inference from circumstantial evidence,' including 'from the very fact that the risk was obvious.'" (*Id.* (quoting *Farmer v. Brennan*, 511 U.S. 825, 842 (1994)).) However, neither "mere negligence" nor "mere disagreement over the proper treatment" is sufficient to

12

create a constitutional claim. (*Id.* (first quoting *Walker v. Schult*, 717 F.3d 119, 125 (2d Cir. 2013) and then quoting *Chance v. Armstrong*, 143 F.3d 698, 703 (2d Cir. 1998)); *see also id.* ("So long as the treatment given is adequate, the fact that a prisoner might prefer a different treatment does not give rise to an Eighth Amendment violation." (alteration omitted) (quoting *Chance*, 143 F.3d at 703)).)

As with the original Complaint, the Amended Complaint fails to meet either prong of the Eighth Amendment analysis. First, as the Court explained in the July Opinion, "[m]inor injuries, such as a broken finger, have consistently been held to fall below the objective level of harm required to maintain" a claim for deliberate indifference under the Eighth Amendment. (*Id.* at 12–13 (citing cases).) The seven-page addition to Plaintiff's original Complaint confirms that Plaintiff's claim is limited to his dislocated ring finger, (*see* Am. Compl. 1–7), as such, the Court confirms its ruling that "the alleged finger injury does not rise to the level of 'an unreasonable risk of serious damage to [Plaintiff's] health,'" (July Op. 12 (quoting *Walker*, 717 F.3d at 125)).

Second, Plaintiff has again failed to demonstrate that Defendants—or any prison official—denied Plaintiff medical care at all, let alone that they were "subjectively reckless in their denial of medical care." *Spavone*, 719 F.3d at 138. As the Court explained in the July Opinion, "treatment of a prisoner's medical condition generally defeats a claim of deliberate indifference," (July Op. 13 (quoting *Melvin v. County of Westchester*, No. 14-CV-2995, 2016 WL 1254394, at *7 (S.D.N.Y. Mar. 29, 2016))), and the records attached to the original Complaint—which Plaintiff attached to his Amended Complaint, (*see generally* Am. Compl.)—demonstrate that Plaintiff received ample medical treatment. As the Court detailed above, Plaintiff was seen by Green Haven care providers on numerous occasions, was given at least two x-rays, received a surgical procedure from an external orthopedic surgeon, had multiple follow-

13

up appointments with the orthopedic surgeon, and participated in two regimens of physical therapy.  *See supra* I.A.

Critically, Plaintiff does not appear to contest that he received medical treatment; rather, his core allegation appears to be that his surgery was unreasonably delayed, which allegedly caused him to suffer permanent damage to his finger.  (*See, e.g.*, Am. Compl. 4 ("Plaintiff show[s] facts in his complaint that deliberate indifference was taken place by the delayed [sic] of surgery."); *id.* ("Plaintiff kept requesting medical attention from medical staff, medical staff along with the named [sic] as 'Defendant(s)' were dilatory in getting the Plaintiff the treatment neccessary [sic] to prevent the permentant [sic] damage to his finger, that was injured in the facilit[y] gym.").)  But as the Court explained in the July Opinion, "a delay in treatment does not violate the constitution unless it involves an act or failure to act that evinces a conscious disregard of a substantial risk of serious harm."  (July Op. 14 (alteration omitted) (quoting *Pabon v. Wright*, No. 99-CV-2196, 2004 WL 628784, at *8 (S.D.N.Y. Mar. 29, 2004), *aff'd*, 459 F.3d 241 (2d Cir. 2006)).)  And "[h]ere, Plaintiff has not alleged any conduct or behavior that would suggest the delay [in his finger surgery] was caused by [Defendants'] deliberate indifference."  (*Id.* (alterations in original) (quoting *Norman v. Marcilla*, No. 17-CV-9174, 2019 WL 3066426, at *5 (S.D.N.Y. July 11, 2019)).)  As with the original Complaint, there are no allegations suggesting that any Defendant took any affirmative steps to prevent Plaintiff from receiving medical treatment; rather, Plaintiff—at most—suggests that Defendants (or unidentified other prison officials) were negligent, which is insufficient to state a claim for deliberate indifference as a matter of law.  (*See* July Op. 14–15 (collecting cases).)

### b.  Equal Protection

Liberally construed, the Amended Complaint also attempts to state an Equal Protection claim, based on Plaintiff's allegations that "[t]hese violations fall under the Fourteenth

Amendment due to the lack of Equal Protection, which upon information & belief, would had been [sic] afforded the Plaintiff [sic] had he been a 'civilian' patient and/or co-worker of the Defendants under similar circumstances." (Am. Compl. 6.) However, this allegation precisely mirrors Plaintiff's Equal Protection claim in his original Complaint, (*see* Compl. 4 ("[T]hese violations fall under the Fourteenth Amendment due to the lack of Equal Protection, which, upon information & belief, would had been [sic] afforded the Plaintiff [sic] had he been a 'civilian' and/or co-worker of the Defendants under similar circumstances.")), and thus, fails for the same reasons, (*see* July Op. 15–16).

Briefly, to adequately state an Equal Protection claim, "a plaintiff must allege 'that he was treated differently than others similarly situated as a result of intentional or purposeful discrimination.'" (*Id.* at 15 (quoting *Philips v. Girdich*, 408 F.3d 124, 129 (2d Cir. 2005)).) The "general rule" is that differential treatment by a state actor "is presumed to be valid and will be sustained if the classification . . . is rationally related to a legitimate state interest." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 440 (1985). This general rule is only disturbed if the classification is "inherently invidious because it disadvantages a suspect class, or because it infringes upon the exercise of a fundamental right." *Hayden v. Paterson*, 594 F.3d 150, 169 (2d Cir. 2010). As the Court explained in the July Opinion, "prisoners either in the aggregate or specified by offense are not a suspect class," (July Op. 16 (quoting *Zigmund v. Foster*, 106 F. Supp. 2d 352, 362 (D. Conn. 2000)), and "Plaintiff does not allege to be part of any other suspect class," (*id.*), therefore, the Court applies rational basis review to Plaintiff's Equal Protection claim, (*see id.*). "[I]n the prison setting," the application of rational basis review "means that [Plaintiff] must demonstrate that his treatment was not 'reasonably related to [any] legitimate penological interests.'" *Phillips v. Girdich*, 408 F.3d 124, 129 (2d Cir. 2005) (last

alteration in original) (quoting *Shaw v. Murphy*, 532 U.S. 223, 225 (2001)).  And as this Court previously held, Plaintiff cannot meet this standard, because "any delay that Plaintiff experienced in his medical care, without more, is explained by the 'state's interest in efficiently distributing its limited resources' along with a prison's 'space and security constraints.'"  (July Op. 16 (first quoting *Hogan v. Russ*, 890 F. Supp. 146, 148 (N.D.N.Y. 1995) and then quoting *Allah v. Annucci*, No. 16-CV-1841, 2020 WL 3073184, at *11 (S.D.N.Y. June 10, 2020)).)[5]

### 3.  State Law Claims

Plaintiff's claims for "medical malpractice" and "medical negligence" continue to be subject to dismissal.  In the Amended Complaint, Plaintiff urges that he "need[s] the [C]ourt to understand the facts of medical malpractice [and medical negligence] in his complaint," and explains that he "has lost the full mobility of his finger" based on "the lapse of time" between Plaintiff's injury and surgery.  (Am. Compl. 3–4.)  The Court understands Plaintiff's allegations and is sympathetic to any lingering effects that Plaintiff is experiencing, but these allegations do not change the Court's conclusion.  As the Court previously explained, New York Correction Law § 24 provides that "[n]o civil action shall be brought in any court of the state . . . against any officer or employee of [DOCCS] . . . in his or her personal capacity, for damages arising out of any act done or the failure to perform any act within the scope of employment and in the discharge of duties by such officer or employee."  N.Y. CORRECT. LAW § 24.  (*See* July Op. 16–17.)  The Second Circuit has held that "[t]his provision, by its plain terms, precludes the assertion of [state law] claims against corrections officers in any court, including the federal courts."  *Baker v. Coughlin*, 77 F.3d 12, 15 (2d Cir. 1996); *see also Davis v. McCready*, 283 F. Supp. 3d 108, 123 (S.D.N.Y. 2017) ("Courts in the Second Circuit have long held that [§] 24

---

[5] Moreover, Plaintiff fails to state a "class of one" Equal Protection claim, for the reasons explained in the July Opinion.  (*See* July Op. 16 n.4.)

16

precludes a plaintiff from raising state law claims in federal court against state employees in their personal capacities for actions arising within the scope of their employment." (collecting cases)). Because Defendants here were DOCCS employees performing their duties at Green Haven when the alleged constitutional violations occurred, Plaintiff's claims are barred by § 24 as a matter of law.

### 4. Denial of Access to Law Library

To the extent Plaintiff seeks to interpose a claim for denial of access to the law library, this claim is also dismissed. While it is axiomatic that prisoners "have a constitutional right of access to the courts," *Bourdon v. Loughren*, 386 F.3d 88, 92 (2d Cir. 2004) (quotation marks omitted), and pro se inmates have a right to assistance in the form of "adequate law libraries or adequate assistance from persons trained in the law," *Bounds v. Smith*, 430 U.S. 817, 828 (1977), Plaintiff cannot maintain a claim against Defendants (i.e., DOCCS employees at Green Haven) for his alleged denial of access to the law library at Rikers Island. Plaintiff does not and cannot allege any conduct on the part of Defendants that had any effect on his access to the Rikers Island law library. *See Bellezza v. Holland*, 730 F. Supp. 2d 311, 314 (S.D.N.Y. 2010) ("To establish a constitutional violation based on denial of access to the courts, a plaintiff must show that *the defendant's conduct* was deliberate and malicious, and that *the defendant's actions* resulted in an actual injury to the plaintiff." (emphasis added) (quotation marks omitted)).[6]

---

[6] If instead Plaintiff cites to the current conditions of his incarceration at Rikers Island as a means of requesting that the Court accept his Amended Complaint or construe his Amended Complaint liberally, (*see* Am. Compl. 7 ("Plaintiff ask the court also to take consideration [sic], during the world pandemic transformation have been taken place [sic] in DOCCS . . . . Plaintiff be granted for him to amended his complaint [sic].")), the Court reminds Plaintiff that the Court has already granted Plaintiff's many requests to amend his original Complaint, *see supra* I.B, and reemphasizes that the Court has construed Plaintiff's Amended Complaint liberally in light of his pro se status, *see supra* II.A.

Because the Court has found Plaintiff's Amended Complaint to be subject to dismissal, the Court declines to address Defendants' argument that Defendants are entitled to qualified immunity.

### III.  Conclusion

For the foregoing reasons, the Court grants Defendants' Motion To Dismiss.  Because this is the second adjudication of Plaintiffs' claims against Defendants on the merits and the Court finds that any further amendment would be futile, the claims are dismissed with prejudice. *See Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) ("Of course, where a plaintiff is unable to allege any fact sufficient to support its claim, a complaint should be dismissed with prejudice."); *Denny v. Barber*, 576 F.2d 465, 471 (2d Cir. 1978) (holding that the plaintiff was not entitled to "a third go-around"); *see also Herbert v. Delta Airlines*, No. 12-CV-1250, 2014 WL 4923100, at *5 (E.D.N.Y. Sept. 30, 2014) (dismissing complaint with prejudice where "[the] [c]ourt previously granted [the pro se plaintiff] leave to replead, identifying his original complaint's deficiencies" and "[the plaintiff's] amended complaint fails to correct any of these deficiencies," explaining that "the [c]ourt lacks the basis to believe further amended pleadings would fare any better").

The Clerk of Court is respectfully directed to terminate the pending Motion, (Dkt. No. 46), to mail a copy of this Opinion & Order to Plaintiff, and close this case.

SO ORDERED.

Dated:   January 13, 2022
         White Plains, New York

                                                     _____
                                                     KENNETH M. KARAS
                                                     United States District Judge